Filed 5/21/21  P. v. Ross CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TERRILL ROSS,<br><br>    Defendant and Appellant. | B305309<br><br>(Los Angeles County<br>Super. Ct. No. A820702) |

APPEAL from an order of the Superior Court of Los Angeles County.  Richard H. Kirschner, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles Lee and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

Terrill Ross (defendant) filed a petition seeking to vacate his murder conviction under Penal Code section 1170.95.[1]  The trial court denied the petition after an evidentiary hearing.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.      Facts

#### A.      *Underlying crime*[2]

In April 1988, defendant and Devin Feagin (Feagin) conducted an armed home-invasion burglary and robbery that ended with Feagin shooting and killing one of the home's two occupants.

At that time, defendant was 17 years old; Feagin, "a few years older."  They were friends.  The day before the crime, Feagin's distinctive looking Cadillac slowly drove by the victims' home.

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

[2]      These facts are drawn from our prior opinion affirming defendant's conviction on direct appeal (*People v. Feagin* (1995) 34 Cal.App.4th 1427 (*Feagin*)) as well as from the record of conviction as recounted by counsel during the evidentiary hearing where not disputed by opposing counsel.

The day of the crime, defendant and Feagin each armed themselves with a loaded gun. They approached the house and knocked on the door before "crash[ing] through the bedroom door" and yelling, "this is a robbery and we have cocked guns."

They first encountered a woman in the kitchen. When the woman picked up a nearby phone to call 911, defendant pointed his gun at her and ordered her to "hang up the phone and get on the floor."

While defendant held the woman at gunpoint, Feagin went down the hall to a bedroom where he came upon the woman's husband. When the husband reached for a gun, Feagin shot him. As the husband lay dying, Feagin ransacked the bedroom, taking a .22 pistol, the couple's passports, and a Seiko watch.

When Feagin returned to the kitchen area, he said, "Let's get the hell out of here." Defendant did not express surprise or horror at what Feagin had done. Instead, he asked, "Do you have any money?" When Feagin lied by answering, "Lots," the two men fled the home, leaving the woman alone with her dying husband.

### B. *Charges, sentence and appeal*

In the operative complaint, the People charged defendant and Feagin with (1) murder (§ 187, subd. (a)), (2) first degree residential robbery (§ 211), (3) residential burglary (§ 459), and (4) assault with a firearm (§ 245, subd. (a)(2)). As to all charges, the People further alleged that both defendant and Feagin had personally used a firearm (§ 12022.5).

The matter proceeded to a jury trial. With respect to the murder charge, the trial court instructed the jury on the theories of (1) direct aiding and abetting, and (2) felony murder. The jury

convicted defendant of all charges and found the personal use of a firearm allegation to be true for all charges.

The trial court sentenced defendant to state prison for 27 years to life. Specifically, the court imposed a sentence of 27 years to life on the murder count, comprised of a base sentence of 25 years to life plus two years for the firearm enhancement. The court imposed but stayed four-year prison sentences on the robbery and burglary counts. And the court imposed a concurrent three-year prison term on the assault count and stayed the firearm enhancement on that count.

We affirmed defendant's convictions and sentence on appeal. (*Feagin*, *supra*, 34 Cal.App.4th at p. 1440.)

## II.    Procedural Background

On January 2, 2019, defendant filed a petition seeking resentencing under section 1170.95. In the form petition, defendant checked the boxes for the allegations that he had been charged with murder, that he was convicted "pursuant to the felony murder rule or the natural and probable consequences doctrine," and that his murder conviction would be invalid under the "changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

After the trial court appointed counsel for defendant and entertained two rounds of briefing, the court found that defendant had alleged a prima facie case for relief and set the matter for an evidentiary hearing.

The court held an evidentiary hearing in late February 2020. The parties relied solely on the record of conviction. Following argument by counsel and defendant's concession that he was a "major participant" in the underlying robbery-burglary, the trial court found beyond a reasonable doubt that defendant

4

had "acted with reckless indifference to human life" and thus was ineligible for relief under section 1170.95. In making this finding, the court enumerated and then analyzed the factors relevant to whether a defendant acts with reckless indifference to human life set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Specifically, the court found that (1) defendant was aware that both he and Feagin would be "armed during the entire robbery and burglary," which aggravated the risk because "[t]he more guns, the greater the chance of gunfire"; (2) defendant was "at the robbery-burglary scene from start to finish," and elected not to restrain Feagin or help the victims despite having the "opportunity" to do so; (3) defendant "knew that the victims were at home and that this was going to be a violent home invasion robbery," but "took no steps" "to limit the duration and extent of the interaction with the [victims] so as to minimize the risk" of harm to them; (4) defendant had no "reason to trust that . . . Feagin was going to be peaceful" because he knew both of them were armed; and (5) defendant made no "efforts to minimize the risk of violence during the course of this armed robbery and burglary."

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his petition for relief under section 1170.95.

In 2018, our Legislature changed the law to eliminate liability for murder resting on a theory of felony-murder (that is, on a theory that the defendant is liable for murder if he participates in an underlying felony and one of his coparticipants kills someone) except upon a showing that the person "was a

5

major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3), added by Stats. 2018, ch. 1015, § 3.) Section 1170.95 is the procedural vehicle by which defendants previously convicted of murder on a felony-murder theory can seek to vacate their murder conviction and be resentenced solely on the underlying felony. (§ 1170.95, subds. (a) & (d).) Where, as here, a defendant has made out a "prima facie showing" that he was entitled to relief because his murder conviction may have rested on a felony-murder theory, the trial court must hold a "hearing to determine whether [the defendant] is entitled to relief." (*Id.*, subd. (d)(3).) At that hearing, the prosecution bears "the burden . . . to prove, beyond a reasonable doubt, that the [defendant] is ineligible for resentencing." (*Ibid.*) Although the courts are split over whether the prosecution carries its burden by proving that no reasonable jury *could* find the defendant guilty of murder because he is a major participant acting with reckless indifference to human life (*People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2020, S265309) or by convincing the trial court hearing the section 1170.95 petition that the defendant was a major participant acting with reckless indifference to human life (*People v. Rodriguez* (2020) 58 Cal.App.5th 227, 241-242, review granted Mar. 10, 2020, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 942, review granted Feb. 10, 2021, S265974; *People v. Clements* (2021) 60 Cal.App.5th 597, 617-618, review granted Apr. 28, 2021, S267624 (*Clements*); *People v. Harris* (2021) 60 Cal.App.5th 939, 952-953, review granted Apr. 28, 2021, S267802; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813-814), we need not take a position because the trial court in this case held the prosecution to the latter, more defendant-friendly

6

burden of proof by making *its own finding* beyond a reasonable doubt that defendant was a major participant acting with reckless indifference to human life. Because the defendant concedes that he was a major participant in the underlying felonies of robbery and burglary, the sole question before is whether substantial evidence supports the trial court's finding that he acted with reckless indifference to human life. (*Clements*, at p. 618; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1084, 1087 (*Bascomb*).)

A defendant acts with reckless indifference to human life when he "'"knowingly engag[es] in criminal activities known to carry a grave risk of death."'" (*Banks*, *supra*, 61 Cal.4th at pp. 800-801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157-158.) This standard "has a subjective and an objective" component. (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Scoggins*, at p. 677, quoting *Banks*, at p. 801.) The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.) To satisfy the objective component, the risk of death "'"must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him[], its disregard involves a gross deviation from the standard of conduct

7

that a law-abiding person would observe in the [defendant's] situation."'" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life. "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks*, *supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins*, *supra*, 9 Cal.5th at p. 677). The considerations are: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Id.*, citing *Clark, supra*, 63 Cal.4th at pp. 618-623.)

Using these considerations as a guide, substantial evidence supports the trial court's finding that defendant acted with reckless indifference to human life. Although defendant's awareness that Feagin was "armed" or that a gun would be used is not enough, "without more," to establish an awareness of a grave risk of death (*Banks*, *supra*, 61 Cal.4th at p. 809, fn. 8), here there was much more: Defendant not only knew a gun would be used, but he and Feagin each had their own gun, those guns were loaded, and defendant and Feagin—immediately upon crashing into the home—expressed their readiness and

8

willingness to *use* those loaded guns by shouting "we have cocked guns." Defendant was physically present in the home the entire time. Although he was not inside the bedroom at the moment Feagin shot the husband, defendant was just down the hall. He could have restrained Feagin by yelling down the hall at him or by accompanying him (with the woman in tow), and could have aided the victims by setting the woman free, by allowing her to call 911 when Feagin was down the hall, or by going to check on the husband after he heard gunfire. Defendant did none of those things. Indeed, he expressly no surprise or anger or concern for Feagin's victim when Feagin returned from the bedroom; instead, he asked Feagin what "money" he had managed to grab. Defendant pointed the barrel of his gun at the woman for several minutes while Feagin shot her husband and ransacked their bedroom. Feagin had once before threatened to kill someone, and defendant had been friends with Feagin long enough that he may well have known about that threat. And defendant made absolutely no effort to minimize the risk of violence during the underlying felonies of robbery and burglary.

This case is remarkably similar to *Bascomb*, *supra*, 55 Cal.App.5th 1077. There, the defendant and a cohort armed themselves, "pushed their way into [a] home," and the defendant ordered one of the residents to the ground at gunpoint while the other went into a bedroom and shot someone. (*Id.* at pp. 1081, 1089-1090.) *Bascomb* held that the defendant acted with reckless indifference to human life. (*Id.* at p. 1089.)

Defendant responds with three categories of arguments.

First, he argues that *we* should independently examine the record and decide for ourselves whether we would find, beyond a reasonable doubt, that defendant acted with reckless indifference

9

to human life. He asserts that the trial court's finding is entitled to no deference because that court's finding was based solely on the "cold record." Thus far, appellate courts have uniformly applied substantial evidence review to the trial court's section 1170.95 findings after an evidentiary hearing. (See *Clements*, *supra*, 60 Cal.App.5th at p. 618; *Bascomb*, *supra*, 55 Cal.App.5th at pp. 1084, 1087.) We need not decide whether we would break with this precedent because, on the record before us, we would independently come to the same conclusion as the trial court.

Second, defendant argues that several considerations compel a finding (should we review the trial court's finding for substantial evidence) or warrant a finding (should we independently make our own finding) that he did not act with reckless indifference to human life. He contends that the trial court was wrong to infer his reckless indifference from the use of guns in the robbery, and reminds us that "the risk of death inherent in an armed robbery" does not amount to reckless indifference to human life. (*Banks*, *supra*, 61 Cal.4th at pp. 808-809.) But this case involved more than a cohort bringing a gun to an armed robbery; here, defendant himself was armed with a loaded gun, proclaimed a willingness to fire it, and then used it to restrain one victim while Feagin killed the other. Next, defendant asserts that there was no evidence he was personally involved in planning the heist. Although there is "significant[] overlap" between the major participant and reckless indifference elements (*Clark*, *supra*, 63 Cal.4th at pp. 614-615), a defendant's involvement in planning the underlying felony is more relevant to whether the defendant was a major participant than whether he acted with reckless indifference (*Banks,* at p. 803) and defendant concedes he was a major participant. The coordinated

10

fashion in which defendant and Feagin entered the home and split up to control the victims also implies that this was not a spontaneous, unplanned raid.  Further, defendant posits that he had no opportunity to restrain Feagin because (1) defendant was 17 and Feagin was "a few years" older, and (2) he was not in the bedroom with Feagin when Feagin shot the husband.  But the inference defendant asks us to draw between the minimal age difference and his lack of influence over Feagin is based on nothing but speculation, and defendant's presence *in the home* enabled him to communicate with—and thereby restrain—Feagin at all times and yet he chose not to do.  Lastly, defendant urges that Feagin's shooting was the product of the husband's conduct in reaching for the gun to defend himself and hence was "unexpected," but the notion that a homeowner might take actions to protect himself from armed assailants is *not* unexpected, and the reckless indifference standard does not require a showing that a defendant "desire[s]" the shooting (*Clark*, at p. 617).  Defendant nevertheless created and then recklessly disregarded the risk of such a confrontation by storming with Feagin into the home with loaded guns and threatening to fire them.

Third, defendant argues that precedent is on his side.  It is not.  He analogizes the facts of this case to *Scoggins*, but the analogy does not hold.  In that case, Scoggins planned an "unarmed assault and robbery" as "revenge" for being defrauded out of money.  (*Scoggins*, *supra*, 9 Cal.5th at p. 671.)  Scoggins did not accompany his recruits because he was afraid the victim might recognize him.  (*Ibid*.)  However, one of the recruiters brought along a gun and opened fire on the victim.  (*Id*. at p. 672.)  After hearing the shots, Scoggins went to the scene and stayed

11

with the victim until the police arrived.  (*Ibid.*)  On these facts, our Supreme Court found that Scoggins had not acted with a reckless indifference to human life.  (*Id.* at pp. 677-683.)  This case is completely different because defendant knew guns would be used, brought along a loaded gun himself, threatened to fire it, personally used it to restrain one victim while Feagin robbed and shot the other, expressed no hesitancy or surprise at the shooting, and fled once he was assured Feagin had secured some loot.  Defendant acknowledges that this case is nearly identical to *Bascomb*, but argues that *Bascomb* was wrongly decided.  We find nothing wrong with *Bascomb*.

### DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ


12